# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ELROD HOLDINGS CORP., *et. al.*, | ) | Case No. 06-11164 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| GEORGE MILLER, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATES OF JACK K. ELROD COMPANY, INC., AND ELROD HOLDINGS CORP., | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 07-51633 (KG) |
| | ) | |
| WESTFIELD STEEL, INC., | ) | |
| | ) | |
| Defendant. | ) | **Re Dkt No. 34** |

## **MEMORANDUM OPINION**[1]

### **I. INTRODUCTION**

On October 16, 2006 (the "Petition Date"), Jack K. Elrod Company, Inc. and Elrod Holdings Corporation (collectively the "Debtors") filed a petition seeking protection under Chapter 7 of the United States Bankruptcy Code (the "Code"). George Miller, the Chapter 7 Trustee ("Trustee"), brought this adversary proceeding against Westfield Steel, Inc. ("Defendant"), alleging that payments made to Defendant totaling $59,124.32 are preferential and should be avoided. In response to the complaint, Defendant filed an answer denying the

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this matter by Federal Rule of Bankruptcy Procedure 9014.

allegations. (Adversary Docket Numbers "Adv. Dkt. Nos." 8 and 34).

Pending before the Court is Defendant's motion for summary judgment (the "Motion") pursuant to Fed. R. Civ. P. 56 as incorporated by Fed. R. Bankr. P. 7056 (Adv. Dkt No. 34), seeking dismissal of the Trustee's preference action. The issues presented by the motion are: (1) whether certain payments made to Defendant fall within the "ordinary course of business" or "contemporaneous exchange" exceptions of section 547 of the Code; (2) whether the Trustee's failure to respond to Defendant's discovery requests, constitutes an admission; and (3) if the ordinary course of business exception applies, whether Defendant is entitled to attorney's fees and expenses. For the reasons stated herein, the Court will grant summary judgment in Defendant's favor and dismiss the current adversary proceeding with prejudice.

## II. JURISDICTION

The Court's jurisdiction rests upon 28 U.S.C. §§ 157(b)(1) and 1334(b) and (d). The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. STANDARD OF REVIEW

The Court is addressing a motion for summary judgment. Summary judgment is proper if there is no genuine issue of material fact, and when viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for

trial. *Pearson v. Component Tech Corp.*, 247 F.3d 471, 482 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)); *see also* Fed. R. Civ. P. 56(c)).

In all cases, the court shall draw all reasonable inferences from the underlying facts most favorably to the nonmoving party. Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, Inc., 998 F.2d 1224 (3d Cir. 1993).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as

true." *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 512 (3d Cir. 1994).

## IV. **FACTS**

Several years prior to its bankruptcy, Debtors established a long-lasting business relationship with Defendant. (Adv. Dkt. No. 35 at 2). Defendant, an Indiana corporation, provided and shipped steel and steel-related materials to the Debtors for their seat manufacturing business. (Adv. Dkt No. 35 at 2). During the course of their business relationship, Debtors and Defendant established a billing and payment procedure where Debtors would submit payments on a single check approximately two months after the Defendant issued its invoices. (Adv. Dkt. No. 35 at 3-4). Instead of submitting payment upon receipt of Defendant's invoices, the Debtors, as well as Defendant's other customers, regularly paid at the completion of a project. (Adv. Dkt. No. 35 at 6-7). This practice, while common in the steel industry, remained consistent throughout Debtors' and Defendant's relationship prior to the bankruptcy filing dating as far back as May 1998. (Adv. Dkt. No. 35 at 4).

The Debtors and Defendant memorialized their payment and billing procedure in writing when the Debtors sent an account application to Defendant and recommended that payment should be made within sixty days from the invoice date. (Adv. Dkt. No. 35 at 3-4). After receiving Debtors' request, the Defendant sent its own form to the Debtors that required payment to be made within thirty days from the invoice date. (Adv. Dkt. No. 35 at 3-4). However, when Debtors signed Defendant's form, Debtors' employee crossed out the

thirty-day" term and wrote in "forty-five" days as a substitute. (Adv. Dkt. No. 35 at 4). Debtors, however, continued to submit payment to Defendant based on the understanding that payment would be accepted between thirty and seventy-three days pursuant to the various oral and written terms. (Adv. Dkt. No. 35 at 4).

In May, June, and July of 2006, Defendant asked Debtors on multiple occasions about several unpaid invoices. (Adv. Dkt. No. 35 at 5). For each unpaid invoice, the Debtors submitted payment in accordance with its regular payment practices with the Defendant. (Adv. Dkt. No. 35 at 5). From 2004 until June 2006, Debtors regularly submitted payments between thirty-five and seventy-three days from the invoice date (averaging approximately two months from the invoice date) (Adv. Dkt. No. 35 at 6). During the ninety days prior to the Petition Date, Debtors submitted payments to Defendant between thirty and seventy-four days. (Adv. Dkt. No. 35 at 6). The Trustee now seeks to avoid all of Debtors' payments made to the Defendant within ninety days of the Petition Date. The aggregate total of the payments made to the Defendant during the ninety-day period before the Petition Date is $59,124.32. (Adv. Dkt. No. 1 at 2).

Shortly after the Trustee instituted this adversary proceeding, Defendant served discovery requests to the Trustee. (Adv. Dkt. 35 at "Exhibit 2"). Among these requests included requests for admissions, production of documents, and interrogatories. (Adv. Dkt. Nos. 24-26, 35). Among the averments made in Defendant's request for admissions included statements alleging that: (1) the payments made to Defendant within ninety days prior to the

Petition Date occurred during the ordinary course of business; (2) the payments made within the ninety day period were contemporaneous exchanges for new value; and that (3) no evidence exists demonstrating Defendant's knowledge of Debtors' insolvency during the preference period or anytime prior to the Petition Date. (Adv. Dkt. No. 35 at "Exhibit 4"). The Trustee never responded.

## IV. DISCUSSION

Defendant provides two grounds upon which the Court should grant judgment in its favor: first, Defendant asserts that the payments made to Defendant are not preference payments because they occurred during the ordinary course of business pursuant to § 547(c)(2) of the Code; and second, the payments constituted contemporaneous exchanges for value according to § 547(1)(A). However, because the Court concludes that the payments satisfy the ordinary course of business exception, the Court will not address the contemporaneous exchange for value claim.

### 1. The Ordinary Course Of Business Exception Of § 547(c)(2) Applies

Under 11 U.S.C. § 547(c)(2), the "ordinary course of business exception" permits a creditor to retain transfers made by a debtor to a creditor during the ninety days before the petition date if : (1) such transfers were made for a debt incurred in the "ordinary course of business" of the parties; and either (2) the transfers were made in the "ordinary course of business" of the parties; or (3) the transfers were made in accordance with "ordinary business terms." *Id.* In order to successfully demonstrate that the ordinary course of business

exception applies, the creditor must prove by a preponderance of the evidence that the transaction between creditor and debtor meets two of the three subparts of § 547(c)(2).

As explained by the Third Circuit Court of Appeals, the ordinary course of business exception is designed to balance the interests of the debtor and creditor. *In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 219 (3d Cir. 1994). As the court in *In re Molded Acoustical Products* explained:

> [T]he preference rule aims to ensure that creditors are treated equitably, both by deterring the failing debtor from treating preferentially its most obstreperous or demanding creditors in an effort to stave off a hard ride into bankruptcy, and by discouraging the creditors from racing to dismember the debtor. On the other hand, the ordinary course exception to the preference rule is formulated to induce creditors to continue dealing with a distressed debtor so as to kindle its chances of survival without a costly detour through, or a humbling ending in, the sticky web of bankruptcy.

*Id.* at 219.

In addition to balancing, courts must also be sensitive to a debtor's need to maintain constructive relationships with certain creditors. Most importantly, when a debtor-creditor relationship "has been cemented long before the onset of insolvency-up through and including the preference period—we should pause and consider carefully before further impairing a creditor whose confident, consistent, ordinary extension of trade credit has given the straightened debtor a fighting change of sidestepping bankruptcy and continuing in business." *Id.* at 224-225.

At the outset, the parties do not dispute that the first requirement of § 547(c) is satisfied. Debtors designed, manufactured, and installed spectator seating for motor sport raceways. In order for them to conduct business they entered into a contractual relationship with Defendant who shipped steel and steel-related products for Debtors' seat manufacturing business. Their business relationship lasted ten years. For these reasons, the first prong of § 547(c) is satisfied.

As to the second requirement of § 547(c), the Court must decide whether the payments made to the Defendant occurred in the ordinary course of business. To make this determination, courts consider factors such as: (1) the length of time the parties engaged in the type of dealing at issue; (2) whether the subject transfers were in an amount more than usually paid; (3) whether the payments at issue were tendered in a manner different from previous payments; (4) whether there appears to have been an unusual action by the debtor or creditor to collect on or pay the debt; and (5) whether the creditor did anything to gain an advantage (such as gain additional security) in light of the debtor's deteriorating financial condition. *In re Forklift LP Corp.*, 340 B.R. 735, 738-39 (D. Del. 2006) (citing *In re Parkline Corp.,* 185 B.R. 164, 169 (Bankr. D. N. J. 1994)). In the situation where the parties have a founded tradition of prior dealings, the focus is on those dealings; where the parties have a short history of dealings, the creditor is required to fill the "gap" by reference to a more extensive and exacting analysis of industry standards. *In re U.S. Interactive, Inc.,* 321 B.R. 388, 392-93 (Bankr. D. Del. 2005). Late payments do not preclude a finding that the payment

occurred during the ordinary course of business; in fact, a pattern of late payments can establish an ordinary course between the parties. *In re Big Wheel Holding Co.*, 223 B.R. 669, 674 (Bankr. D. Del. 1998).

The Trustee's primary and sole argument is that the Defendant threatened to withhold future shipments from Debtors and that this conduct elevates to "unusual collection activity." (Adv. Dkt. No. 50). The Trustee cites to Defendant's July 13, 2006 call logs in "Exhibit F" attached to the Affidavit of Lori Hively ("Hively Aff.") where the Defendant told Debtors that it would not wait one week for payment and that Defendant would hold Debtors' order until it received payment. (Hively Aff. at "Exhibit F"). The Trustee concludes that because this threat constitutes "unusual collection activity" the ordinary course of business exception does not apply. (Adv. Dkt. No. 50).

The Court disagrees with the Trustee's contentions and finds that the activity meets the ordinary course of business exception. The Court is satisfied that after weighing the evidence in the record, the ordinary course of business exception of § 547(c)(2)(A) applies. As stated in the affidavit of the Debtors' controller, the Court places great importance on the fact that the Debtors and Defendant successfully conducted business without interruption for over ten years. In the event Defendant became unsatisfied with Debtors' payment practices, Defendant had remedies at its disposal. The parties' silence as to the timing of payments is evidence that both parties were content with the way they conducted business. While the timing of payments during the ten-year relationship varied, Debtors consistently and regularly

made payments to the Defendant averaging two months from the date of the invoice during the ordinary course of their business. As evidenced by the Defendant's records in "Exhibit F," Debtors paid multiple invoices by submitting a single check. This payment method existed for over ten years and was the same method Debtors used to make payments during the ninety day preference period. In addressing the Trustee's argument, the Court finds that the Defendant took no unusual action in attempting to collect unpaid invoices. Throughout its ten year relationship with the Debtors, Defendant customarily called several times to collect unpaid invoices and threatened to withhold shipment. (Hively Aff. at "Exhibit F") As with the method of payment, this was also the same practice used within the preference period. Furthermore, there is no evidence that suggests Defendant took advantage of the Debtors' deteriorating financial condition leading up to their bankruptcies. In fact, Defendant was not even aware that the Debtors filed for bankruptcy until informed by a business associate. (Adv. Dkt. No. 35 at "Exhibit 4"). For these reasons, the Court finds that the ordinary course of business exception applies.

To the extent the ordinary course of business exception applies, the Court does not need to determine whether the third prong of § 547(c) is satisfied since the amended 2005 Code, as amended in 2005, requires only a showing that a transfer was *either* made in the ordinary course of business *or* that the transfer existed under ordinary business terms within the industry. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 § 1501(b), Pub. L. No. 109-8 Stat. 23 (emphasis added). The Court also does not need to address

whether the monies paid by the Debtors within the preference period constitute a "contemporaneous exchange for value" because the Court finds that the ordinary course of business exception applies.

### 2. Defendant's Statements Are Deemed Admitted

The next issue before the Court is whether the Trustee's failure to respond to Defendant's discovery requests constitutes an admission. In its motion, the Defendant contends that the Trustee failed to cooperate in discovery by failing to file either an answer or objection to Defendant's discovery requests and admissions. In summary, the Defendant's admissions included statements asserting that the invoice payments made within the preference period occurred during the ordinary course of business and that no evidence exists demonstrating that the Defendants had knowledge of Debtors' insolvency either during the preference period or prior to the Petition Date. (See Adv. Dkt. No. 35 at Exhibit "4"). Defendant argues that the Court should deem the Trustee to have admitted pursuant to Fed. R. Bankr. P. 7036 and Fed. R. Civ. P. 36(a)(3), given the Trustee's failure to respond.

Bankruptcy Rule 7036 and Rule 36(a)(3) of the Federal Rules of Civil Procedure provide in pertinent part that, "[a] matter is admitted unless within 30 days after being served, the party to whom the [discovery] request is directed serves on the requesting party a written answer or objection . . . ." Fed. R. Civ. P. 36(a)(3). Under the circumstances of this case, the Court finds that Defendant's statements are admitted. The Trustee failed to respond to all

three of Defendant's discovery requests and even neglected to address this failure in its response to Defendant's Motion. (Adv. Dkt. 50)².

### 3.    Defendant Is Not Entitled To Recover Attorney Fees And Costs

Lastly, Defendant contends that it is entitled to attorney's fees pursuant to Rule 7054 of the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P.). In support of its argument, Defendant alleges that the Trustee's complaint is a frivolous and an unreasonable filing that provides no foundation for its preference action. (Adv. Dkt. No. 35 at 19). Furthermore, the Defendant also asserts that due to the Trustee's lack of cooperation in discovery, it incurred unreasonable attorney's fees and expenses. (Adv. Dkt. No. 35 at 22).

As a threshold matter, the party seeking costs bears the burden of proof. To satisfy this burden, the party must make a sufficient record by documenting the costs with enough specificity to permit the court to evaluate the merits of the request. *In re Northwestern Corp.*, 326 B.R. 519, 530 (Bankr. D. Del. 2005), *aff'd*, 369 B.R. 775 (D. Del. 2007); *accord Rohrbough v. Univ. of CO Hosp. Auth.*, 2008 WL 1840723, at *1 (D. Colo. Apr. 22, 2008); *In re Northlake Dev., LLC*, 2008 Bankr. LEXIS 870, 2008 WL 782495, at *5 (Bankr. S.D. Miss. Mar. 20, 2008); *In re Clansy*, 2008 Bankr. LEXIS 3700, 2008 WL 177779, at *4 (Bankr. S.D. Tex. Jan. 18, 2008). Many courts, including courts in the Third Circuit, hold that "where the litigated issues involve not basic contract enforcement questions, but issues

---

² The Trustee's failure to respond to discovery requests is far from limited to this case and the Court considers such discovery abuse a potential ground for dismissal and/or imposition of sanctions.

peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party." *In re Fobian*, 951 F.2d 1149, 1153 (9th Cir. 1991); *see also In re Child World, Inc.*, 161 B.R. 349, 354 (Bankr. S.D.N.Y. 1993).

The Court finds that the Defendant did not meet its burden in demonstrating it is entitled to attorney's fees and expenses. Although the Court does not approve of the Trustee's conduct of the case, including the Trustee's failure to cooperate in discovery and dearth of factual support in the complaint, the Court does not find the Trustee's actions rise to the level of bad faith or harassment necessary to justify imposing attorney's fees and expenses in this case.

## V. CONCLUSION

The Court finds that the Defendant, as a matter of fact and law, has met the summary judgment standards for proving that the long-established trade practices between Debtors and Defendant comport with the "ordinary business exception." For the reasons stated, the Court will grant summary judgment in Defendant's favor and will dismiss this adversary proceeding with prejudice. Defendant's request for attorney's fees will be denied. The Court will issue an Order consistent with this opinion.

Dated: March 31, 2010

KEVIN GROSS, U.S.B.J.

13